Lionel Z. Glancy (SBN 134180)
Robert V. Prongay (SBN 270796)
Jonathan M. Rotter (SBN 234137)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Chet B. Waldman (admitted *Pro Hac Vice*)
**WOLF POPPER LLP**
845 Third Avenue 12th Floor
New York, NY 10022
Telephone: (212) 759-4600
Fax: (212) 486-2093
Email: cwaldman@wolfpopper.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE MACLAUGHLAN BOZARTH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ENVISION HEALTHCARE CORPORATION, EMCARE HOLDINGS, INC., and EDS-I PRACTICES OF CALIFORNIA,<br><br>Defendants. | Case No. 5:17-CV-1935 FMO (SHKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS FROM PLAINTIF'S AMENDED CLASS ACTION COMPLAINT**<br><br>Date: February 22, 2018<br>Time: 10:00 a.m.<br>Courtroom: 6D<br>Judge: Hon. Fernando M. Olguin<br><br>Oral Argument Requested |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................1

II.    PROCEDURAL HISTORY .................................................1

III.   ARGUMENT......................................................................2

     A.    Motions to Strike Are Highly Disfavored and Rarely Granted ..............2

     B.    Defendants' Motion to Strike is Procedurally Improper........................3

     C.    Defendants' Motion to Strike is Premature...........................................6

     D.    Defendants Have Not Shown That the Class is Not Certifiable .............9

            1.    Class Membership Can Be Objectively Ascertained...................9

            2.    The Class is Not "Fail-Safe"......................................................13

            3.    Plaintiff Has Sufficiently Pled the Rule 23 Elements.................18

IV.   CONCLUSION..................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Aetna Health Inc. v. Rak*,
　2012 N.Y. Misc. LEXIS 6768 (Sup. Ct. N.Y. Cty. Sept. 11, 2012) ....................10

*Ahmed v. HSBC Bank United States, N.A.*,
　2017 U.S. Dist. LEXIS 183912 (C.D. Cal. Nov. 6, 2017) .....................................7

*Alexander v. Am. Express Co.*,
　2011 U.S. Dist. LEXIS 151371 (C.D. Cal. Nov. 10, 2011) ................................20

*Alhassid v. Bank of Am., N.A.*,
　60 F. Supp. 3d 1302 (S.D. Fla. 2014)...................................................................22

*Artis v. Deere & Co.*,
　276 F.R.D. 348 (N.D. Cal. 2011) .........................................................................18

*In re AutoZone, Inc.*,
　289 F.R.D. 526 (N.D. Cal. Dec. 21, 2012)....................................................14, 17

*Azad v. Tokio Marine HCC – Med. Ins. Servs. LLC*,
　2017 U.S. Dist. LEXIS 109758 (N.D. Cal. July 14, 2017) ...............................2, 9

*Baas v. Dollar Tree Stores, Inc.*,
　2007 U.S. Dist. LEXIS 65979 (N.D. Cal. Aug. 29, 2007)...................................20

*Ballard v. Equifax Check Servs.*,
　186 F.R.D. 589 (E.D. Cal. 1999)..........................................................................19

*Bates v. Bankers Life & Casualty Co.*,
　848 F.3d 1236 (9th Cir. 2017)................................................................................8

*Beal v. Lifetouch, Inc.*,
　2011 U.S. Dist. LEXIS 33758 (C.D. Cal. Mar. 15, 2011) .....................................4

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
　2006 U.S. Dist. LEXIS 88988 (N.D. Cal. Nov. 28, 2006)................................6, 7

*Bratset v. Davis Joint Unified Sch. Dist.*,
　2017 U.S. Dist. LEXIS 208690 (E.D. Cal. Dec. 18, 2017)....................................2

*Brown v. DIRECTV, LLC*,
　2014 U.S. Dist. LEXIS 195473 (C.D. Cal. May 27, 2014)....................................8

*Cholakyan v. Mercedes-Benz, USA, LLC*,
　796 F. Supp. 2d 1220 (C.D. Cal. 2011).................................................................8

*Clark v. Sprint Spectrum L.P.*,
　2011 U.S. Dist. LEXIS 26962 (C.D. Cal. Mar. 7, 2011) .......................................8

*In re Conagra Foods, Inc.*,
　302 F.R.D. 537 (C.D. Cal. 2014) .........................................................................13

ii

*Cruz v. Sky Chefs, Inc.*,
  2013 U.S. Dist. LEXIS 65114 (N.D. Cal. May 6, 2013) ................................ 8, 18

*Cummings v. Bank of Am.*,
  2016 U.S. Dist. LEXIS 148026 (D. Mont. Sept. 15, 2016) ...................................9

*Dake v. Receivables Performance Mgmt., LLC*,
  2013 U.S. Dist. LEXIS 160341 (C.D. Cal. Apr. 16, 2013)................................2, 7

*Davenport v. Wendy's Co.*,
  2014 U.S. Dist. LEXIS 103058 (E.D. Cal. July 25, 2014) ..................................20

*Dean v. Colgate-Palmolive Co.*,
  2015 U.S. Dist. LEXIS 80150 (C.D. Cal. June 17, 2015)...................................17

*Delux Cab v. Uber Techs., Inc.*,
  2017 U.S. Dist. LEXIS 57494 (S.D. Cal. Apr. 13, 2017) ......................................5

*Donaca v. Metro. Life Ins. Co.*,
  2014 U.S. Dist. LEXIS 198899 (C.D. Cal. Jan. 22, 2014)....................... 4, 23, 24

*DuRocher v. NCAA*,
  2015 U.S. Dist. LEXIS 41110 (S.D. Ind. Mar. 31, 2015) ...................................18

*Etzel v. Hooters of Am., LLC*,
  223 F. Supp. 3d 1306 (N.D. Ga. 2016) ...............................................................15

*Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*,
  284 F.R.D. 238 (E.D. Pa. 2012) ...........................................................................9

*Graves v. Southwestern & Pac. Specialty Fin., Inc.*,
  2013 U.S. Dist. LEXIS 158512 (N.D. Cal. Nov. 4, 2013)....................................3

*In re Harman Int'l Indus., Inc. Sec. Litig.*,
  791 F.3d 90 (D.C. Cir. 2015) ..............................................................................12

*Hanni v. Am. Airlines, Inc.*,
  2010 U.S. Dist. LEXIS 3410 (N.D. Cal. Jan. 15, 2010) ................................ 9, 12

*Herrera v. JFK Med. Ctr., L.P.*,
  648 Fed. Appx. 930 (11th Cir. 2016) ..................................................................21

*Hibbs-Rines v. Seagate Techs., LLC*,
  2009 U.S. Dist. LEXIS 19283 (N.D. Cal. Mar. 2, 2009) ......................................3

*Holak v. Kmart Corp.*,
  2012 U.S. Dist. LEXIS 176331 (E.D. Cal. Dec. 12, 2012)...................................8

*Howard v. CVS Caremark Corp.*,
  2014 U.S. Dist. LEXIS 172406 (C.D. Cal. Dec. 9, 2014) ..................................18

*John v. Nat'l Sec. Fire & Cas. Co.*,
  501 F.3d 443 (5th Cir. 2007)...............................................................................18

*Juarez v. Citibank, N.A.*,
  2016 U.S. Dist. LEXIS 118483 (N.D. Cal. Sept. 1, 2016)..................................14

iii

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017)..........................................................................22

*Kamm v. Cal. City Dev. Co.*,
   509 F.2d 205 (9th Cir. 1975).............................................................................20

*In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*,
   2012 U.S. Dist. LEXIS 163852 (C.D. Cal. Oct. 24, 2012) ........................ 3, 9, 24

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
   2016 U.S. Dist. LEXIS 63745 (S.D.N.Y. May 12, 2016)...................................16

*In re Lithium Ion Batteries Antitrust Litig.*,
   2014 U.S. Dist. LEXIS 141358 (N.D. Cal. Oct. 2, 2014)....................................6

*Mantolete v. Bolger*,
   767 F.2d 1416 (9th Cir. 1985).........................................................................18

*Meyer v. Receivables Performance Mgmt., LLC*,
   2013 U.S. Dist. LEXIS 65918 (W.D. Wash. May 8, 2013)................................23

*Mills v. Foremost Ins. Co.*,
   511 F.3d 1300 (11th Cir. 2008).......................................................................20

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)..........................................................................19

*Moran v. Prime Healthcare Management, Inc.*,
   3 Cal. App. 5th 1131 (2016)............................................................................22

*Moussouris v. Microsoft Corp.*,
   2016 U.S. Dist. LEXIS 116131 (W.D. Wa. Mar. 7, 2016) ................................9

*Olney v. Job.Com, Inc.*,
   2013 U.S. Dist. LEXIS 141339 (E.D. Cal. Sept. 30, 2013) ........................ 16, 17

*Ortega v. Natural Balance, Inc.*,
   300 F.R.D. 422 (C.D. Cal. 2014) .....................................................................10

*Ortiz v. CVS Caremark Corp.*,
   2013 U.S. Dist. LEXIS 169854 (N.D. Cal. Dec. 2, 2013) ................................16

*Pepka v. Kohl's Dep't Stores, Inc.*,
   2016 U.S. Dist. LEXIS 186402 (C.D. Cal. Dec. 21, 2016) ..............................24

*Perkins v. LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014)..............................................................20

*Peter G. Milne, P.C. v. Ryan*,
   477 S.W.3d 888 (Tex. App.—Texarkana 2015) ......................................... 14, 15

*Pitts v. Terrible Herbst, Inc.*,
   653 F.3d 1081 (9th Cir. 2011)...........................................................................7

*Rosario v. U.S. Citizenship*,
   2017 U.S. Dist. LEXIS 111761 (W.D. Wa. July 18, 2017) ..............................18

iv

*Roy v. Wells Fargo Bank, N.A.*,
　2015 U.S. Dist. LEXIS 39636 (N.D. Cal. Mar. 27, 2015) ....................................4

*San Allen v. Buehrer*,
　11 N.E.3d 739 (Oh. 2014) ...............................................................................15

*Silcox v. State Farm Mut. Auto Ins. Co.*,
　2014 U.S. Dist. LEXIS 176297, (S.D. Cal. Dec. 22, 2014) ................................14

*Slovin v SunRun, Inc.*,
　2016 U.S. Dist. LEXIS 141583 (N.D. Cal. Oct. 12, 2016) ...................................8

*Smilow v. Sw. Bell Mobile Sys., Inc.*,
　323 F.3d 32 (1st Cir. 2003) .............................................................................20

*Stabilisierungsfonds Fur Wein v. Kaiser*,
　647 F.2d 200 (D.C. Cir. 1981) ...........................................................................2

*Stassart v. Lakeside Joint Sch. Dist.*,
　2009 U.S. Dist. LEXIS 121707 (N.D. Cal. Dec. 8, 2009) ........................... 12, 24

*In re Sumitomo Copper Litig.*,
　262 F.3d 134 (2d Cir. 2001) .............................................................................17

*Swift v. Zynga Game Network, Inc.*,
　2010 U.S. Dist. LEXIS 117355 (N.D. Cal. Nov. 3, 2010) ...................................5

*Tasion Communs., Inc. v. Ubiquiti Networks*,
　2014 U.S. Dist. LEXIS 35455 (N.D. Cal. Mar. 14, 2014) ...................................5

*Tietsworth v. Sears, Roebuck and Co.*,
　720 F. Supp. 2d 1123 (N.D. Cal. Mar. 31, 2010) ...............................................6

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*,
　283 F.R.D. 199 (S.D.N.Y. 2012) ......................................................................19

*Valencia v. Volkswagen Group of Am. Inc.*,
　2015 U.S. Dist. LEXIS 105545 (N.D. Cal. Aug. 11, 2015) .................................6

*Velasquez v. HSBC Fin. Corp.*,
　2009 U.S. Dist. LEXIS 5428 (N.D. Cal. Jan. 16, 2009) .....................................14

*Vinole v. Countrywide Home Lonas, Inc.*,
　571 F. 3d 935 (9th Cir. 2009) ........................................................................6, 7

*Vizcaino v. U.S. Distr. Ct. for W.D. Wash.*,
　173 F.3d 713 (9th Cir. 1999) ...........................................................................18

*In re Wal-Mart Stores, Inc.*,
　505 F. Supp. 2d 609 (N.D. Cal. 2007)....................................................... 2, 3, 8, 14

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ................................................................................... 7, 19

*Warren v. Town of Speedway*,
　2013 U.S. Dist. LEXIS 178273 (S.D. Ind. Dec. 19, 2013) ................................19

v

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ...................................................... 4, 5, 21

*Yamamoto v. Omiya*,
  564 F.2d 1319 (9th Cir. 1977) ....................................................... 5

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ......................................................... 16

**Rules**

Fed. R. Civ. P. 12 ............................................................... *passim*

Fed. R. Civ. P. 23 ............................................................... *passim*

 **Other Authorities**

*Federal Practice and Procedure Civil* § 1785.3 (3d ed. 2005) ................................ 3

*Newberg on Class Actions* § 1115(b) (1st ed. 1977) ................................................ 20

vi

## I. **INTRODUCTION**

Motions to strike class allegations prior to discovery are highly disfavored and rarely granted.  Defendants' motion to strike provides no basis for this Court to make it the rare exception to this general rule.[1]  Defendants' motion seeks to have this Court preemptively deny class certification based solely on a strained misreading of the pleadings.  However, the U.S. Supreme Court and the Ninth Circuit have repeatedly cautioned against ruling on the propriety of class actions without affording plaintiffs an opportunity to discover supporting evidence.  Accordingly, nearly every district court in this Circuit presented with a motion to strike class allegations prior to discovery and a formal class certification request has denied the motion as premature or improper.  Defendants' motion should similarly be denied.

## II. **PROCEDURAL HISTORY**

Plaintiff filed this action in state court on August 22, 2017.  ECF No. 1 (notice of removal attaching initial complaint).  On September 21, 2017, Defendants filed in state court a barebones Answer to the initial complaint, containing a one-sentence "general denial" to all of the initial complaint's allegations, *see* ECF No. 1 (notice of removal attaching Answer).

On September 22, 2017, the action was removed to this Court.  ECF No. 1 (notice of removal).  Plaintiff filed her Amended Complaint on November 11, 2017.  ECF No. 23.  On January 4, 2018, Defendants filed the instant motion (ECF No. 32), as well as a motion under Fed. R. Civ. P. 12(c) (ECF No. 31), and a request for judicial notice (ECF No. 33).  Defendants did not file a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

---

[1]  Unless otherwise specified herein, all capitalized terms shall have the same meaning as defined in Plaintiff's Amended Class Action Complaint filed November 11, 2017 (ECF No. 23) ("Amended Complaint"); all internal citations, quotation marks, and alteration marks are omitted; and all emphasis is added.  "¶" denotes paragraphs in the Amended Complaint.  Defendants' Memorandum of Points and Authorities in Support of [Their] Motion to Strike Class Action Allegations from Plaintiff's Amended Class Action Complaint is referred to herein as Defendants' "motion to strike," "motion," or "MTS Br."

Discovery only recently commenced. The parties exchanged initial disclosures on December 14, 2017, and Plaintiff served document requests on December 13, 2017, to which Defendants responded, objecting to virtually everything and producing only one contract (and an amendment to it). Defendants did not provide initial disclosure documents until January 17, 2018 (more than a week after they filed this motion), and then only provided a limited production of documents pertaining to Defendants' initial disclosures, most of which were documents actually produced to them by Plaintiff's hospital. No depositions have taken place. Discovery is not scheduled to close until June 1, 2018. ECF No. 27.

Plaintiff has not filed a motion for class certification. The current deadline for Plaintiff to file such motion is September 17, 2018. ECF No. 27.

## III.   ARGUMENT

### A.   Motions to Strike Are Highly Disfavored and Rarely Granted

"Motions to strike class allegations at the pleading stage are highly disfavored," *Azad v. Tokio Marine HCC – Med. Ins. Servs. LLC*, 2017 U.S. Dist. LEXIS 109758, at *26 (N.D. Cal. July 14, 2017), and "not ordinarily granted," *Bratset v. Davis Joint Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 208690, at *6 n.2 (E.D. Cal. Dec. 18, 2017). *See generally Stabilisierungsfonds Fur Wein v. Kaiser*, 647 F.2d 200, 201 (D.C. Cir. 1981) ("motions to strike, as a general rule, are disfavored.").

Such motions "are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic." *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). They are rarely granted because movants are unable to overcome the extremely high burdens associated with such motions. *See Dake v. Receivables Performance Mgmt., LLC*, 2013 U.S. Dist. LEXIS 160341, at *16 (C.D. Cal. Apr. 16, 2013) ("It is rare for the Court to strike class allegations at this stage in the litigation.").

These burdens include demonstrating that the class allegations sought to be

2

stricken "could have no possible bearing on the subject matter of the litigation," with "[a]ny doubt concerning the import of [such] allegations . . . weigh[ed] in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 614. In addition, unlike a motion for class certification, where the plaintiff bears the burden of proving that the class is certifiable, in the case of a motion to strike class allegations, "it is properly the defendant who must bear the burden of proving that the class is not certifiable." *In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 163852, at *6 (C.D. Cal. Oct. 24, 2012).

As such, courts routinely deny motions to strike class allegations on the pleadings and consider "a motion for class certification [to be] a more appropriate vehicle for arguments about class propriety." *Hibbs-Rines v. Seagate Techs., LLC*, 2009 U.S. Dist. LEXIS 19283, at *7 (N.D. Cal. Mar. 2, 2009); *see also Graves v. Southwestern & Pac. Specialty Fin., Inc.*, 2013 U.S. Dist. LEXIS 158512, at *15 (N.D. Cal. Nov. 4, 2013) (motions to strike class allegations "are best addressed at the class certification stage after the parties have had an opportunity to conduct discovery and Plaintiffs have filed a motion for class certification."); 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure Civil* § 1785.3 (3d ed. 2005) ("the practice employed in the overwhelming majority of class actions is to resolve class certification only after an appropriate period of discovery.").[2]

### B.   Defendants' Motion to Strike is Procedurally Improper

Defendants have moved to strike the class allegations pursuant to Fed. R. Civ. P. 12(f) and 23(d)(1)(D).  As Defendants have not demonstrated that either of these Rules support their motion, it should be denied as procedurally improper.

Rule 12(f) provides that a court may strike from a pleading any portion thereof

---

[2] In the extremely rare cases where such motions have been granted, it was evident from the face of the pleadings that under no circumstances could the class action be maintained, which is not the case here as demonstrated *infra* (and even then courts allowed amendment of the class definition).

3

that is "[(1)] an insufficient defense," or that constitutes "any [(2)] redundant, [(3)] immaterial, [(4)] impertinent, or [(5)] scandalous matter."  According to the Ninth Circuit, a Rule 12(f) motion that fails to show that the allegations sought to be stricken fall within one of the Rule's five enumerated categories must be denied. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010) (district court erred in granting Rule 12(f) motion because "none of the five categories [in Rule 12(f)] covers the allegations in the pleading sought to be stricken . . . .").

Defendants' motion fails for this reason, as they make no attempt to demonstrate that the class allegations fit within any of the Rule 12(f) categories.  Nor could they, as the class allegations are "clearly relevant to the subject matter of [this class action] litigation, and do not amount to redundant, immaterial, impertinent, or scandalous matters."  *Beal v. Lifetouch, Inc.*, 2011 U.S. Dist. LEXIS 33758, at *21 (C.D. Cal. Mar. 15, 2011) (denying Rule 12(f) motion to strike class allegations); *see, e.g.*, *Roy v. Wells Fargo Bank, N.A.*, 2015 U.S. Dist. LEXIS 39636, at *5-6 (N.D. Cal. Mar. 27, 2015) (same, as class allegations did "not . . . fit any Rule 12(f) category" and the defendant did "not claim" that they did); *Donaca v. Metro. Life Ins. Co.*, 2014 U.S. Dist. LEXIS 198899, at *6-7 (C.D. Cal. Jan. 22, 2014) (same, as class allegations "fit[] none of the categories of proper Rule 12(f) motions enumerated in *Whittlestone*.").

Defendants' attempts to satisfy Rule 12(f) by raising issues with the class allegations that do not fall within any of the Rule 12(f) categories are of no moment. *See, e.g.*, *Donaca*, 2014 U.S. Dist. LEXIS 198899, at *6-7. (rejecting arguments that the class, as defined, was not ascertainable and "fail-safe," as plaintiff's class definition "clearly is not an 'insufficient defense' as it is not a defense at all," "[i]t is not redundant," "[i]t is neither immaterial nor impertinent, because the class definition relates directly to [plaintiff's] putative class action and is thus necessary to his claim," and "defendants do not contend that the class definition is scandalous."); *Roy*, 2015 U.S. Dist. LEXIS 39636, at *6 (same, with respect to argument that class

allegations were "legally insufficient.").

Indeed, many courts deny Rule 12(f) motions to strike class allegations as procedurally improper. *See, e.g.*, *Delux Cab v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 57494, at *23 (S.D. Cal. Apr. 13, 2017) ("Rule 12(f) is not the proper procedural vehicle for challenging class claims."); *Tasion Communs., Inc. v. Ubiquiti Networks*, 2014 U.S. Dist. LEXIS 35455, at *11 (N.D. Cal. Mar. 14, 2014) (denying Rule 12(f) motion to strike class allegations, and admonishing defendants to "be more cognizant of the Federal Rules of Civil Procedure in the future" so as to "avoid the filing of . . . procedurally improper motions" "which serve no purpose but to waste paper and clog the Court's docket.")[3]; *Swift v. Zynga Game Network, Inc.*, 2010 U.S. Dist. LEXIS 117355, at *29 (N.D. Cal. Nov. 3, 2010) (denying Rule 12(f) motion to strike class allegations because "the Ninth Circuit has indicated that Rule 12(f) is not the proper vehicle for dismissing portions of a complaint").[4]

Defendants have also moved to strike the class allegations pursuant to Rule 23(d)(1)(D)[5], which provides that, "[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed

---

[3] Notwithstanding the *Tasion* defendants' "procedural missteps," the court considered the arguments in the defendants' Rule 12(f) motion, "solely because combining the argument section of Defendants' motion to strike and the argument section of their [accompanying] motion to dismiss result[ed] in a total argument length that would be under the 25 page limit for motions under th[e] Court's local rules." *Id.* at *11. Here, although the motion page limit is the same, *see* L.R. 11-6, this Court should not consider the arguments in Defendants' Rule 12(f) motion as part of their Rule 12(c) motion, as the latter is already at the maximum 25-page length.

[4] *See also Whittlestone*, 618 F.3d at 974 (a motion to strike a complaint's allegations that does not satisfy any of the Rule 12(f) categories but that is "really an attempt to have certain portions of [the] complaint dismissed," is "better suited for a Rule 12(b)(6) motion . . ., not a Rule 12(f) motion."); *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint.").

[5] The cover pages of Defendants' motion to strike and memorandum in support thereof state that the motion is being brought pursuant to "Fed. R. Civ. P. 12(d)(1)(D)" (as does page 6 of the memorandum in support). This appears to be a scrivener's error, as no such Rule exists.

5

accordingly." However, Rule 23(d)(1)(D) "has no application" where, as here, the question of class certification has not yet been raised with the court through the filing of a motion for class certification. *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 U.S. Dist. LEXIS 88988, at *10 (N.D. Cal. Nov. 28, 2006) (denying motion to strike class allegations under what is now Rule 23(d)(1)(D) on the grounds that such motion was "procedurally inseparable" from a Rule 23(c) motion to certify, and the plaintiffs had not yet filed such a motion); *see Valencia v. Volkswagen Group of Am. Inc.*, 2015 U.S. Dist. LEXIS 105545, at *4-5 n.2 (N.D. Cal. Aug. 11, 2015) (denying motion to strike class allegations and agreeing with *Beauperthuy* that Rule 23(d)(1)(D) "is an inappropriate mechanism to test whether the class may be certified at this early stage of the litigation.")[6]; *see also Vinole v. Countrywide Home Lonas, Inc.*, 571 F. 3d 935, 941 (9th Cir. 2009) (the Ninth Circuit explicitly recognized, and did not question, *Beauperthuy*'s holding that it was "procedurally improper to consider" a motion to strike class allegations where "the question of certification was not yet before the court and discovery was ongoing.").[7]

Defendants' motion should therefore be denied as procedurally improper.

## C.   Defendants' Motion to Strike is Premature

Even if this Court does not find Defendants' motion to strike procedurally improper, it should nevertheless deny it as premature, as virtually no discovery has taken place and no formal motion for class certification has been filed. *See Ahmed v.*

---

[6] Defendants' citation to *In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS 141358, at *107-109 (N.D. Cal. Oct. 2, 2014), is inapposite, as that case did not involve a motion to strike class allegations brought pursuant to Rule 23(d)(1)(D), but rather involved a motion to dismiss, where the court found that dismissal without prejudice was warranted because the named plaintiffs lacked "standing" to represent absent class members from other states. Similarly, in *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1146-47 (N.D. Cal. Mar. 31, 2010), cited by Defendants, the court struck class allegations only after the pleadings revealed that the proposed classes would have included persons with "no standing to sue," including the named plaintiff.

[7] In *Vinole*, the Ninth Circuit declined to create a "'*per se* rule' prohibiting defendants from moving to *deny* class certification," but recognized *Beauperthuy*'s holding regarding motions to *strike* class allegations. *Id.*

*HSBC Bank United States, N.A.*, 2017 U.S. Dist. LEXIS 183912, *5 (C.D. Cal. Nov. 6, 2017) (Olguin, J.) (quoting authority that "[s]triking class allegations prior to a formal certification motion is generally disfavored due to the lack of a developed factual record."). Defendants' motion, which essentially requests an order preemptively denying class certification, constitutes an "improper attempt" to "slip through the backdoor," *Beauperthuy*, 2006 U.S. Dist. LEXIS 88988, at *9-10, "a thinly veiled opposition to a yet-to-be-filed motion for class certification," *Dake*, 2013 U.S. Dist. LEXIS 160341, at *15.

The Ninth Circuit has consistently warned against denying certification at the pleading stage, because "often the pleadings alone will not [be sufficient to] resolve the question of class certification," in which case "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable." *Vinole*, 571 F. 3d at 942[8]; *see also Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1094 n.5 (9th Cir. 2011) (it is an "abuse of discretion" to deny class discovery in cases where "the propriety of a class action cannot be determined" absent such discovery). The U.S. Supreme Court has similarly emphasized that "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (because "Rule 23 does not set forth a mere pleading standard," "class determination generally involves considerations that are

---

[8] In *Vinole*, the Ninth Circuit affirmed the district court's grant of a motion to *deny* class certification, but only after observing that the district court had before it "considerably more information . . . than just the pleadings." *Id.* at 943. Unlike here, where virtually no discovery has taken place, the plaintiffs in *Vinole* were provided with "nearly ten months" "in which to conduct discovery related to the question of class certification" before filing their opposition to the defendants' motion to deny. *Id.* at 943. During that time, the plaintiffs "conducted significant discovery," and by the date of the court's hearing on the motion (which was only three weeks before the discovery cutoff date), the plaintiffs admitted that they "did not intend to propound any additional discovery . . . regarding the propriety of class certification." *Id.*

enmeshed in the factual and legal issues comprising the plaintiff's cause of action.").

For this reason, district courts have been overwhelmingly reluctant to resolve class issues without discovery.  *See, e.g.*, *Brown v. DIRECTV, LLC*, 2014 U.S. Dist. LEXIS 195473, at *3-4 (C.D. Cal. May 27, 2014) ("courts rarely dismiss class allegations at the pleading stage because the parties have not yet engaged in discovery and the shape of a class action is often driven by the facts of a particular case."); *Holak v. Kmart Corp.*, 2012 U.S. Dist. LEXIS 176331, at *23 (E.D. Cal. Dec. 12, 2012) (same, noting  discovery is "integral" to resolving class certification issues); *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d at 615 ("dismissal of class allegations at the pleading stage should be done rarely" and "the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery.").

This is especially true in the case of pre-discovery motions to strike, which "[d]istrict courts in this [C]ircuit regularly deny."  *Brown*, 2014 U.S. Dist. LEXIS 195473, at *4; *see, e.g.*, *Slovin v SunRun, Inc.*, 2016 U.S. Dist. LEXIS 141583, at *4 (N.D. Cal. Oct. 12, 2016) ("Defendants essentially seek to litigate Rule 23 class certification prematurely.  While defendants' arguments may eventually prove to be convincing, defendants' motion to strike is premature given that discovery is still ongoing and no motion for class certification has been filed."); *Cruz v. Sky Chefs, Inc.*, 2013 U.S. Dist. LEXIS 65114, at *18 (N.D. Cal. May 6, 2013) ("Given the relatively early stage of the proceedings" where "class discovery began only recently," it is "premature" to strike the class allegations); *Cholakyan v. Mercedes-Benz, USA, LLC*, 796 F. Supp. 2d 1220, 1245-46 (C.D. Cal. 2011) (same, surveying numerous similar cases); *Clark v. Sprint Spectrum L.P.*, 2011 U.S. Dist. LEXIS 26962, at *9-10 (C.D. Cal. Mar. 7, 2011) (same, denying motion to strike class allegations pursuant to Rules 12(f) and 23(d)(1)(D)).[9]

---

[9] *See also Bates v. Bankers Life & Casualty Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) ("A decision to grant a motion to strike class allegations . . . is the functional

8

Defendants' motion should therefore be denied as premature.[10]

### D.     Defendants Have Not Shown That the Class is Not Certifiable

If this Court does not find Defendants' motion to strike procedurally improper or premature, it should nevertheless deny it.  None of the host of speculative class certification "issues" Defendants prematurely posit are sufficient to satisfy their heavy burden of "proving that the class is not certifiable" under any circumstances. *Land Rover*, 2012 U.S. Dist. LEXIS 163852, at *6; *see Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 284 F.R.D. 238, 245 (E.D. Pa. 2012) (denying motion to strike class allegations where defendants were unable to prove that "no amount of discovery will demonstrate that the class can be maintained.").

Indeed, even if this Court were to find that "it may be difficult" for Plaintiff to certify a class, that would not be sufficient to grant Defendants' motion.  *Cummings v. Bank of Am.*, 2016 U.S. Dist. LEXIS 148026, at *9 (D. Mont. Sept. 15, 2016) (denying motion to strike after making such finding); *see, e.g.*, *Azad*, 2017 U.S. Dist. LEXIS 109758, at *26 (same, even where "the court has doubts as to whether this case can be maintained as a class action").

### 1.     Class Membership Can Be Objectively Ascertained

"An identifiable class exists if its members can be ascertained by reference to

---

equivalent of denying a motion to certify a case as a class action . . . ."); *Azad*, 2017 U.S. Dist. LEXIS 109758, at *26 ("While it is true that a few courts have held that Rule 12(f) provides a means of striking class allegations," such a motion appears to improperly "'allow a determination of the suitability of proceeding as a class action without actually considering a motion for class certification.'").

[10] Most of the cases upon which Defendants rely do not involve motions to strike class allegations from the pleadings, but are instead cases where courts made more fact-bound determinations, such as denying fully briefed motions for class certification.  *See, e.g.*, *Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) (affirming denial of fully briefed motion for class certification); *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075 (N.D. Cal. Apr. 18, 2011) (denying fully briefed motion for class certification); *Hanni v. Am. Airlines, Inc.*, 2010 U.S. Dist. LEXIS 3410 (N.D. Cal. Jan. 15, 2010) (same).  Given this procedural distinction, such cases are inapposite.  *See Moussouris v. Microsoft Corp.*, 2016 U.S. Dist. LEXIS 116131, at *11 n.4 (W.D. Wa. Mar. 7, 2016) (denying motion to strike and rejecting as "unpersuasive" cases that dealt with class certification).

objective criteria." *Ortega v. Natural Balance, Inc.*, 300 F.R.D. 422, 426 (C.D. Cal. 2014). Here, the Class is defined to include:

> all persons residing in the State of California who were provided emergency medical services at an in-network emergency department by an out-of-network provider employed by EmCare or an affiliate, and received a *surprise bill* from the provider for an amount *beyond the reasonable fair market value rates*.

¶ 64 (emphasis added). Notwithstanding Defendants' arguments to the contrary, each aspect of this definition can be determined objectively.[11]

First, whether a patient's bill constitutes a "surprise bill" can be readily determined from Defendants' billing records, insurance company records, or from a glance at the patient's bill or EOB. The Amended Complaint alleges that it is Defendants' "*modus operandi*" and regular practice to not reveal to patients what insurance they do or do not accept, and to provide patients with no way to find out this information. *See, e.g.*, ¶¶ 2-4, 23, 43, 76, 85. Per Defendants' design, all Class members are thus equally unaware that their EmCare provider is out-of-network prior to receiving their bills.

In this context, a "surprise bill" is no different from a "balance bill," which is simply a bill reflecting the portion of a medical debt that has not been covered by insurance. *See Aetna Health Inc. v. Rak*, 2012 N.Y. Misc. LEXIS 6768, at *4 (Sup. Ct. N.Y. Cty. Sept. 11, 2012) ("A balance bill is a bill sent by an out-of-network

---

[11] Although Defendants do not raise any ascertainability arguments concerning the un-italicized portions of the Class definition (above), such portions can also be determined objectively. For example, whether a patient was provided emergency medical services at an in-network ED by an out-of-network provider could be readily determined by reviewing the patient's medical bills or EOBs, which would disclose whether (1) ED services rendered by physicians, and (2) ED facility and equipment fees charged by the hospital, were covered by the patient's insurance. If a patient's bill or EOB indicated that the former was not covered, but the latter was—as was the case with Plaintiff—that would mean the patient was treated in an in-network facility by an out-of-network provider. Determining whether the provider was employed by Defendants could be easily done from reviewing Defendants' employment and billing records.

provider to a patient, which includes . . . that amount of the provider's charges that exceeds the amount of benefit paid under the patient's [insurance] plan."). There is no need to question individual patients to gauge whether they were subjectively "surprised" to receive such a bill, as Defendants suggest.

Defendants' reliance on the boilerplate language contained in Plaintiff's insurance Plan is a red herring. It is ironic that Defendants are relying on Plaintiff's insurance Plan, since Defendants are not signatories nor parties to it, nor are they third party beneficiaries of it. Defendants inappropriately point to the Plan language, not found in the pleadings, warning enrollees that they *may* be billed for services provided by out-of-network providers at in-network facilities.[12] However, even if the Plan language was properly before the Court, it would be beside the point. Defendants should know when their physicians are not in-network to the same insurance plans as the hospital, yet until they bill the patient (i.e., after the fact), they do not identify the name of the physician group actually providing services, which information is necessary to allow consumers to contact their insurance companies to determine whether the ED physicians are in-network to their plans. Nor do Defendants post notice in the ED stating that it is run by a separate company from the hospital.

A boilerplate warning by another entity, not Defendants, that consumers may be charged for out-of-network services rendered at in-network facilities—a common feature of health benefit plans, regardless of ERISA status—is not a meaningful disclosure as it does not provide consumers with the information they need to make an informed decision and does nothing to mitigate the harm caused by Defendants' failures to disclose. A vague, generic warning of a possible charge is of no help to consumers when Defendants know that the charge is certain and definite yet make it impossible to avoid the warned-of scenario.

---

[12] Plaintiff's opposition to Defendants' motion for this Court to take judicial notice of the Plan is being filed simultaneously herewith.

This is *caveat emptor* in its most pernicious form.  An analogy from the securities fraud context illustrates this distinction:

> [C]autionary language cannot be "meaningful" if it is misleading in light of historical facts that were established at the time the statement was made. . . . .  A warning that identifies a potential risk, but implies that no such problems were on the horizon even if a precipice was in sight, [is not meaningful] . . . .  [A] person who warns his hiking companion to walk slowly because there might be a ditch ahead when he knows with near certainty that the Grand Canyon lies one foot away, [is not providing the companion with adequate notice] . . . .

*In re Harman Int'l Indus., Inc. Sec. Litig.*, 791 F.3d 90, 102-03 (D.C. Cir. 2015).[13]

Second, whether patients have been billed amounts in excess of the reasonable fair market value rates for the services performed can be readily determined through an analysis of objective criteria.  As the Amended Complaint alleges, patients receiving emergency medical services are billed at one of only *five* CPT Codes for which Defendants set standard rates, regardless of the nature of patient injuries or the individual procedures performed under those Codes.[14]  *See, e.g.*, ¶¶ 21, 30, 53.  For each of these five Codes, the Amended Complaint alleges that Defendants' "*modus*

---

[13]  Defendants may speculate that it is possible that some Class member's hypothetical insurance contract discloses Defendants' practices.  However, that would be an improper merits argument, which is not only outside the pleadings, but directly challenges the pleadings—to be accepted "as true" at this stage—which contend that it is Defendants' across the board practice not to reveal such information to patients or allow them to find out.  *See Stassart v. Lakeside Joint Sch. Dist.*, 2009 U.S. Dist. LEXIS 121707, at *7 (N.D. Cal. Dec. 8, 2009) ("As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff.").

[14]  Thus, Defendants' argument, *see, e.g.*, MTS Br., *passim,* that each individual's medical records would have to be examined is a gross misstatement of Plaintiff's claims.  The gravamen of Plaintiff's Amended Complaint is not that individualized medical treatment is relevant, but that Defendants' practice is to overcharge patients at each CPT Code; not that the Codes themselves are incorrectly assessed.  Accordingly, Defendants' reliance on cases such as *Hanni* to argue that everything depends on a patient's individual medical condition is misplaced.

*operandi*" and regular practice is to bill patients at rates that exceed, across the board, the reasonable fair market rates associated with those Codes. *See, e.g.*, ¶¶ 2-5, 36-42, 56, 58, 61, 77, 86, 92 (Defendants bill patients "at excessive rates much higher than the reasonable value implied by law"). Thus, regardless of what emergency services an individual patient receives, or under which particular CPT Code the patient's emergency services are charged, Plaintiff alleges that Defendants' out-of-network bills for those services exceed the reasonable fair market values. No individualized inquiries are required.[15]

Defendants' related argument, MTS Br. at 16, that reasonable values are individual issues, precluding commonality and predominance because they are incapable of proof and therefore impossible to determine damages, ignores Plaintiff's allegations regarding the FAIR Health website. ¶¶ 36-38. The FAIR Health website provides medical cost estimates, by zip code for CPT codes, based on a database of over 24 billion health care claims paid for by private insurance plans. An expert, if not someone far less expert, could readily determine the reasonable value for services billed to the five CPT Codes for emergency services anywhere (and calculate damages). As the website states, as a "testament to the fairness and reliability of our data, New York, Connecticut, and many other states have adopted FAIR Health's cost information as a guidepost in laws protecting consumers, and for many other purposes." ¶ 36.

### 2. The Class is Not "Fail-Safe"

A "fail-safe" class is one that "impermissibly determines membership based upon a determination of liability," *In re Conagra Foods, Inc.*, 302 F.R.D. 537, 567 n.102 (C.D. Cal. 2014), such that "class members either win or are not in the class," and cannot be bound by any adverse judgment, *In re AutoZone, Inc.*, 289 F.R.D. 526,

---

[15] The *amount* of each patient's overcharge (i.e., *damages*), can be calculated by a formula applicable classwide, and, even if that were not the case, individualized damages calculations here cannot defeat class certification. *See* discussion in § III.D.3., *infra*.

13

545-46 (N.D. Cal. Dec. 21, 2012).

Courts often reject arguments that a putative class is "unascertainable" or "fail-safe" when denying motions to strike class allegations. *See, e.g.*, *Juarez v. Citibank, N.A.*, 2016 U.S. Dist. LEXIS 118483, at *13 (N.D. Cal. Sept. 1, 2016) (rejecting defendant's "fail-safe" argument as "premature" and denying motion to strike); *Silcox v. State Farm Mut. Auto Ins. Co.*, 2014 U.S. Dist. LEXIS 176297, at *22-23 (S.D. Cal. Dec. 22, 2014) (same, explaining that plaintiff "should be given the opportunity to make the case for certification in a later motion where such issues can be evaluated by the Court in their entirety."); *Velasquez v. HSBC Fin. Corp.*, 2009 U.S. Dist. LEXIS 5428, at *13-14 (N.D. Cal. Jan. 16, 2009) (same, even after finding class definition "troubling"); *In re Wal-Mart Stores*, 505 F. Supp. 2d at 615-16 (same, even after finding class definitions "suspicious" and "improper"); *see also Lewis v. Wendy's Int'l, Inc.*, 2010 U.S. Dist. LEXIS 144164, at *42 n.79 (C.D. Cal. Mar. 24, 2010) ("Defendant's assertion that the trial court should (indeed, must) address alleged deficiencies with the proposed class definition at the pleading stage, however, mischaracterizes the law.").

Here, the Class is not "fail-safe" because "the question of whether a person is a class member is separate and distinct from the question of whether the Defendants are liable to that person." *Peter G. Milne, P.C. v. Ryan*, 477 S.W.3d 888, 907 (Tex. App.—Texarkana 2015). In defending against Plaintiff's claims, Defendants have raised numerous "issues that go toward deciding whether [they] are liable, but are not necessary to determine if a person is or are not a class member." *Id.* Specifically, with respect to Plaintiff's UCL and CLRA claims, Defendants raise (Plaintiff does not concede that she is required to prove these elements in the manner Defendants suggest), *inter alia*, issues of falsity, reliance, causation, injury, and standing that Defendants contend are elements of Plaintiff's claims, none of which are addressed within the Class definition. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Judgment on the Pleadings ("Rule 12(c)

14

motion" or "MJP Br.") at 27-31.   With respect to Plaintiff's breach of implied contract or quasi-contract claim, Defendants argue, *inter alia*, that excessively charging patients for out-of-network services was not, in and of itself, an unlawful act, and did not unjustly enrich Defendants or establish Class members' rights to restitution.  *See id*. at 31-32.[16]  While Plaintiff strongly disagrees with Defendants' arguments, because the Court need not resolve any of these issues to determine who is a Class member, *see* discussion in § III.D.1., *supra*, "class membership and liability are separate and independent issues, and this is not a fail-safe class."  *Peter G. Milne, P.C.*, 477 S.W.3d at 907.

This concept was well explained by the Court of Appeals of Ohio in *San Allen v. Buehrer*.   There, the putative class was defined to include persons who were overcharged insurance premiums using "inflated" base rates, and sued for unjust enrichment (seeking restitution).   11 N.E.3d 739, 791 (Oh. 2014).   The defendant, BWC, moved to decertify the class on the grounds that it was "fail-safe" because "the merit issue of base rate 'inflation' was included within the class definition."  *Id*. The court disagreed, finding that "[t]here was no need for [it] to decide the merits in order to determine who was in the class," since, as here, "[c]lass members . . . could be readily identified from the [defendant's] records."  *Id*.

Moreover, the court found that "the fact that members of the plaintiff class were charged 'inflated' premium rates was not determinative of the BWC's liability, nor did it establish [class members'] right to restitution."  *Id*.  As the court explained:

> The BWC's liability was based on whether [it] violated its statutory
> obligations in imposing "inflated" premium rates and whether [it] was
> unjustly enriched as a result of its collection and retention of those

---

[16] In addition, two elements of the breach of implied contract or quasi-contract claim that are not in the Class definition are the existence of an implied contract and a breach of such contract.  *See Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1316-17 (N.D. Ga. 2016) (denying motion to strike class allegations and finding class not "fail-safe" because class definition did not include "all of the elements" of the plaintiff's claim).

"inflated" premiums.  The BWC argued that even if the plaintiff class was charged inflated premiums, the class was not entitled to equitable restitution because the BWC (1) did not violate any laws and (2) was not unjustly enriched.  This argument proves the point that the class at issue is not a proscribed fail-safe class.

*Id.* at 791-92.  Similarly here, as noted, Defendants' arguments against liability in their Rule 12(c) motion "prove[] the point that the [C]lass at issue is not a proscribed fail-safe class."  *Id.*; *see Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (class defined to include persons who were charged taxes on their payments of improperly assessed insurance premiums was not "fail-safe," as defendants argued that even if class members were overcharged, they were "not ultimately liable").[17]

That said, even if, *arguendo*, the Class were determined to be "fail-safe," this certainly need not be fatal to Plaintiff's class allegations.  "[I]n the Ninth Circuit, it is not necessary to deny certification (or in this case strike class allegations) simply because the initially proposed class is a 'fail safe' class.  . . . .  Rather, the proposed class may be redefined to avoid" the problem.  *Olney v. Job.Com, Inc.*, 2013 U.S. Dist. LEXIS 141339, at *33 (E.D. Cal. Sept. 30, 2013); *see, e.g.*, *In re Libor-Based Fin. Instruments Antitrust Litig.*, 2016 U.S. Dist. LEXIS 63745, *75-77 (S.D.N.Y. May 12, 2016) (denying motion to strike fail-safe class, as "reformation of the class definition . . . is the appropriate response," and the defendant "identified no case holding that the appropriate relief is to strike the class allegations entirely"); *Ortiz v. CVS Caremark Corp.*, 2013 U.S. Dist. LEXIS 169854, at *21-22 (N.D. Cal. Dec. 2, 2013) (class definitions "could be modified, if necessary" to cure the fail-safe issue);

---

[17] Defendants rely on *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825, 825 (7th Cir. 2012), without discussing it, for a general proposition of law as to what constitutes a "fail-safe" class.  Plaintiff notes, however, that *Messner* actually vacated the district court's denial of class certification, and explained that issues with the class definition "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis."  *Id.*

*AutoZone*, 289 F.R.D. at 545-46 (fail-safe class determination would not be fatal because the court retains "broad discretion . . . to [re]define the class to avoid the fail-safe problem," either on its own or by "afford[ing] plaintiffs an opportunity to do so.").[18]

If Plaintiff needed to replead, because EmCare routinely excessively bills, a satisfactory new class definition may be:  "All persons residing in the State of California who were provided emergency medical services at an in-network emergency department by an out-of-network provider employed by EmCare or an affiliate, and received a balance bill."[19]  Such alteration addresses any perceived defects Defendants have raised.  *See Olney*, 2013 U.S. Dist. LEXIS 141339, at *33-34 (denying motion to strike fail-safe class because the plaintiff proposed a redefined class definition that eliminated "any language . . . that could even arguably cause a 'fail-safe' problem.").[20]

In addition, as many courts have observed, "it is not clear that the Ninth Circuit forbids fail-safe classes."  *AutoZone*, 289 F.R.D. at 546 (citing *Vizcaino v.*

---

[18] *See also Dean v. Colgate-Palmolive Co.*, 2015 U.S. Dist. LEXIS 80150, at *29-30 (C.D. Cal. June 17, 2015) ("once the relevant facts of the case have been explored during discovery, it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any [individualized issues] . . . immaterial."); *cf. In re Sumitomo Copper Litig.*, 262 F.3d 134, 139 (2d Cir. 2001) (the district court can "alter or modify the class, create subclasses, and decertify the class whenever warranted.").

[19] Depending upon what class discovery ultimately reveals, another possible iteration of the Class definition that may be appropriate is:  "All persons residing in the State of California who were provided emergency medical services at an in-network emergency department by an out-of-network provider employed by EmCare or an affiliate, and received a balance bill from the provider for an amount beyond the reasonable fair market value rates."  *Cf. Dixon v. Monterey Fin. Servs.*, 2016 U.S. Dist. LEXIS 82601, at *13-14 (N.D. Cal. June 24, 2016) (where, unlike here, the plaintiff did not propose an alternative class definition, the court granted the defendants' motion to strike, however, with leave to amend).

[20] Unsurprisingly, in response to the newly proposed class definition, the defendant argued that the class was overbroad.  *Olney*, 2013 U.S. Dist. LEXIS 141339, at *34. The court rejected this argument as defendant trying to "have it both ways," stating, "[i]f it is per se impermissible to define the class in such a way that it only includes persons whose rights have been violated," as defendants contend, then "it cannot be per se impermissible to re-define that class to include some individuals who[se] [rights were potentially not violated]."  *Id.* at *34-35.

*U.S. Distr. Ct. for W.D. Wash.*, 173 F.3d 713, 722 (9th Cir. 1999)); *see also Rosario v. U.S. Citizenship*, 2017 U.S. Dist. LEXIS 111761, at *29 (W.D. Wa. July 18, 2017) (recognizing same); *Howard v. CVS Caremark Corp.*, 2014 U.S. Dist. LEXIS 172406, at *11 (C.D. Cal. Dec. 9, 2014) ("In light of the fact that the Ninth Circuit has not expressly forbidden fail safe classes, the [c]ourt declines [defendant's] invitation to deny certification on this ground alone.").

### 3.    Plaintiff Has Sufficiently Pled the Rule 23 Elements

As discussed above, Defendants' motion to strike is a premature and improper attempt to litigate class certification at the pleading stage.  However, even if the Court were to consider the propriety of the class allegations now, Defendants' arguments would fail because Plaintiff has made a "prima facie showing that the class action requirements of [Rule] 23 are satisfied."  *See Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352 (N.D. Cal. 2011) (a prima facie showing does "not concern" whether the plaintiff "*will* ultimately satisfy her burden of establishing that a class action is proper").[21]

Plaintiff has sufficiently pled numerous common issues of liability that are central to the validity of each Class member's claims.  These include, *inter alia*: whether Defendants' common course of conduct alleged in the Amended Complaint constitutes:  (i) "unlawful" or "unfair" business acts or practices within the meaning of the UCL (¶ 74) (i.e., have Defendants violated the UCL? (¶ 67)); (ii) "unfair" or "deceptive" acts or practices in violation of the CLRA (¶ 84) (i.e., have Defendants

---

[21] Defendants cite several cases where, unlike here, class allegations were struck or dismissed due to the plaintiffs' failure to even attempt to show that their pleadings satisfied the prima facie standard.  *See, e.g.*, *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (affirming district court's dismissal of class allegations where plaintiffs did not even contend on appeal that the class they proposed was ascertainable); *DuRocher v. NCAA*, 2015 U.S. Dist. LEXIS 41110, at *11, *23-26 (S.D. Ind. Mar. 31, 2015) (in personal injury matter, where court recognized that "personal injury claims are generally not appropriate for class treatment," court granted motion to strike after plaintiffs made no attempt to "dispute," "respond to," or otherwise "defend" against the defendants' attacks on the "viability of [their] class allegations"); *see also Cruz*, *supra*, 2013 U.S. Dist. LEXIS 65114, at *13 (distinguishing *John* and denying motion to strike).

violated the CLRA? (¶ 67)); and/or (iii) a breach of Defendants' implied contractual obligations to their patients, which depends upon what Defendants can reasonably charge patients with whom they have no express contractual agreement (¶ 67) (i.e., have Defendants been unjustly enriched through their improper conduct? (¶ 67)).

Deciding each of these issues will resolve all Class members' claims "in one stroke," thus more than satisfying the "commonality" element of Rule 23(a)(2). *Dukes*, 564 U.S. at 350, 359[22]; *see, e.g.*, *Warren v. Town of Speedway*, 2013 U.S. Dist. LEXIS 178273, at *10 (S.D. Ind. Dec. 19, 2013) ("Particularly appropriate for class treatment are claims arising from a defendant's standardized conduct towards members of the proposed class."); *Ballard v. Equifax Check Servs.*, 186 F.R.D. 589, 595 (E.D. Cal. 1999) ("A common nucleus of operative fact is typically found where defendants have engaged in standardized conduct toward members of the proposed class").

As these common issues of liability pled in the Amended Complaint overwhelm any individual ones, Plaintiff has also made a prima facie showing of Rule 23(b)(3) "predominance" (i.e., that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and . . . are more substantial than the issues subject only to individualized proof."). *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 210 (S.D.N.Y. 2012) (where "the issue of liability is common to members of the class," "common questions are held to predominate over

---

[22] Defendants turn *Dukes* on its head by arguing that it requires a plaintiff to plead additional common issues beyond those that are "central to the validity" of the claims. *See Dukes*, 564 U.S. at 350; MTS Br. at 13-14. Defendants cite no authority for this proposition, which is plainly belied by *Dukes* itself. *See Dukes*, 564 U.S. at 359 ("for purposes of Rule 23(a)(2), even a *single* common question will do."). It is quite evident that, had Plaintiff listed additional issues in her Amended Complaint, Defendants surely would have asserted that *those* issues (whatever they might be) did not go towards resolving the merits of the claims, as *Dukes* requires, but were merely the type of common "questions" that any clever lawyer can devise when pleading a case.

individual questions.").[23]

Even if Defendants were able to identify some hypothetical issue that may necessitate individualized inquiries, it would not likely defeat predominance. *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39-40 (1st Cir. 2003) (predominance does not require that all questions are common to the class or that there are no individual issues).[24]   Moreover, predominance questions are, by their nature, ill-suited to resolution on a motion to strike.  *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309-11 (11th Cir. 2008) (because of the parties' conflicting views on the ease of proving the class's claims though common evidence, "the district court's conclusion as to the predominance issue at the complaint stage was speculative at best and premature at least," and constituted an abuse of discretion).[25]

---

[23] Defendants baldly assert that Plaintiff will be unable to demonstrate the Rule 23 elements of numerosity, typicality, adequacy, or superiority, but put forth no new arguments in that regard, other than the arguments they make against "commonality" and "predominance."  In any event, for example, Plaintiff has made a prima facie showing of "typicality" here, as her claims stem from the same "practice or course of conduct" of Defendants as those of all other Class members.  *Newberg on Class Actions* § 1115(b) (1st ed. 1977) (a representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory.").  Moreover, Defendants' argument that Plaintiff is atypical and is in conflict with other Class members is incorrect and irrelevant because the Amended Complaint focuses on Defendants' across-the-board conduct.

[24] As indicated above, Plaintiff's claims (for violation of the UCL, CLRA, and breach of implied contract) are based on the fact that Defendants overcharged patients at each CPT Code; not that the Codes themselves were incorrectly assessed, as Defendants contend.  *See* MTS Br. at 15-16.  No individual issues can be created by phantom "claims" that Plaintiff does not allege.

[25] Defendants' citation to *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205 (9th Cir. 1975), for the proposition that where, unlike here, a plaintiff fails to properly plead the Rule 23 requirements the class allegations should be stricken prior to discovery, is misplaced.  *See Davenport v. Wendy's Co.*, 2014 U.S. Dist. LEXIS 103058, at *25-26 (E.D. Cal. July 25, 2014) (*Kamm* "does not stand for th[at] proposition," as "[a]t no point did the *Kamm* court address the plaintiff's failure to properly plead the requirements of Rule 23."); *Alexander v. Am. Express Co.*, 2011 U.S. Dist. LEXIS 151371, at *5 (C.D. Cal. Nov. 10, 2011) (noting that *Kamm* "dismissed the complaint in the context of a Rule 23 motion, not a . . . 12(f) motion."); *Baas v. Dollar Tree Stores, Inc.*, 2007 U.S. Dist. LEXIS 65979, at *7-8 (N.D. Cal. Aug. 29, 2007) ("Defendant's reliance on *Kamm* is misplaced.").

20

Nevertheless, based solely on their disputed interpretation of the pleadings, Defendants wrongly (and prematurely) assert that commonality and predominance is *impossible* (it is not) to *prove* (Plaintiff need only make a prima facie showing at this stage) through classwide evidence. *See Whittlestone,* 618 F.3d at 973 (the court may not resolve disputed factual or legal issues in deciding a motion to strike).   For example, Defendants contend that the Court would need to review and compare each Class member's medical chart and hospital bill to determine whether they were charged an unreasonable rate. *See* MTS Br. at 15-17.  As discussed above, however, such individual analyses are wholly unnecessary.  The Amended Complaint alleges that Defendants bill patients under each CPT Code at rates that greatly exceed, across-the-board, the insurance reimbursement rates for the same Codes, *see, e.g.*, ¶¶ 2-5, 36-42, 56, 58, 77, 86, 92, "thus easing problems with determining the reasonableness [of the rates]" on a classwide basis, *Herrera v. JFK Med. Ctr., L.P.*, 648 Fed. Appx. 930, 935-36 (11th Cir. 2016).

In *Herrera*, under similar circumstances as here, the Eleventh Circuit reversed the trial court's grant of a motion to strike class allegations at the pleading stage. There, the plaintiffs, who all had a specific type of insurance called "PIP," alleged that the hospital defendant charged them "fees far in excess of what it usually and customarily charges" patients with non-PIP private insurance for radiological services. *Id*. at 932.  The defendants argued that predominance could not be satisfied because, to determine liability, the court would have to look at the reasonableness of the various charges for each class member's radiological services.  *Id*. at 935.  The plaintiffs countered that doing so was not necessary because "their theory of liability is that Defendants, *across the board*, charged unreasonable rates for emergency radiological services to PIP patients." *Id*.  As such, the court noted that:

> the numerous factors Defendants cite as requiring individual analyses
> may not be dispositive after all.  Discovery could reveal that it is
> relatively easy to determine that these rates are unreasonable across

21

> the board without having to resort to analyzing subtle differences
> between hospitals. And presumably each hospital consistently
> charges the same rate for a specific service.

*Id.* at 936. Noting the possibility that the plaintiffs' theory could prove correct, the Eleventh Circuit reversed the district court's finding, "based solely on the face of the complaint," that liability issues would not predominate, and remanded to allow the plaintiffs an opportunity to conduct discovery. *Id.*

Defendants also incorrectly contend that determining the *amount* of the excess charges for each patient—which has nothing to do with whether or not Defendants are liable, and concerns *damages*—would necessitate individualized inquiries. *See* MTS Br. at 17. Even if that were true (it is not), the "presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (as long as the damages "stemmed from the defendant's actions that created the legal liability," the U.S. Supreme Court's decision in *Comcast* is satisfied). Albeit without discovery on this issue, Plaintiff has already shown that the authoritative and comprehensive FAIR Health database could be consulted to compare the average charges for each CPT Code within a particular zip code, with corresponding charges contained on patients' EmCare bills. *See, e.g.*, ¶¶ 36-42. Once Plaintiff has an opportunity to conduct discovery, she anticipates that she, or an expert she retains, will readily be able to present a model for calculating damages without necessitating individualized inquiries.[26]

---

[26] To the extent that Defendants contend that Class members who did not pay the full amount of their bills have suffered no injury, *see* MTS Br. at 17, courts have rejected similar arguments. *See Moran v. Prime Healthcare Management, Inc.*, 3 Cal. App. 5th 1131, 1143 (2016) ("Although [the defendants] had not begun any collection activity, the existence of an enforceable obligation, without more, ordinarily constitutes actual injury or injury in fact."); *see also Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1321-22 (S.D. Fla. 2014) (refusing to dismiss unjust enrichment claim where plaintiffs did not pay improperly assessed mortgage fees, reasoning that the unpaid fees were added to the plaintiffs' outstanding loan balances, and the issue of whether the improperly assessed fees conferred a benefit

All of Defendants' arguments in this regard, which speculate and prejudge the types of evidence that will be uncovered during the barely begun discovery process to support the Rule 23 elements, are improper at this stage. *See Meyer v. Receivables Performance Mgmt., LLC,* 2013 U.S. Dist. LEXIS 65918, at *7-9 (W.D. Wash. May 8, 2013).

*Meyer* is instructive on this point. There, the defendant moved to dismiss[27] the class allegations prior to discovery, arguing, much like Defendants here, that the plaintiff would be "unable to prove" her claims through classwide evidence and could not demonstrate commonality or predominance. 2013 U.S. Dist. LEXIS 65918, at *3. The court found such assertion "baffling," and described numerous, "entirely plausible" scenarios under which the plaintiff could "uncover evidence that [would] permit her, on a classwide basis, to prove [her claims]." *Id.* at *7-8. The court concluded (at *7-9) that:

> RPM falls well short of convincing the court that Ms. Meyer cannot demonstrate commonality or the predominance of common questions.
>
> . . . . It is entirely plausible that Ms. Meyer, after discovery, will be able to demonstrate not only common questions, but common questions that predominate over individualized inquiries. Perhaps RPM is correct that [these] . . . issues will ultimately require an individualized inquiry, but there is no way to make that determination now. RPM's motion illustrates why courts typically decide class certification after discovery, not on the pleadings.

For similar reasons, courts routinely reject arguments about plaintiffs' supposed inability to satisfy the Rule 23 elements, including commonality and

---

for unjust enrichment purposes was "a question of fact that cannot be resolved at the motion to dismiss stage").

[27] Although *Meyer* involved a motion to dismiss class allegations, the *Donaca* court found *Meyer* "particularly apposite" when denying a motion to strike class allegations. 2014 U.S. Dist. LEXIS 198899, at *11-12.

predominance, when denying premature motions to strike class allegations.  *See, e.g.*, *Donaca*, 2014 U.S. Dist. LEXIS 198899, at *6-7 n.21, 11-12 (in light of *Meyer*, denying motion to strike as premature, even though defendants raised "significant questions concerning predominance and the need for individualized inquiries"); *Land Rover*, 2012 U.S. Dist. LEXIS 163852, at *10-11 (same, even though the court "share[d] [d]efendant's concerns" regarding the plaintiffs' inability to satisfy the Rule 23 elements).  This Court should do the same.[28]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to strike the class allegations should be denied in its entirety.

Respectfully submitted this 25th day of January, 2018.

By: /s/ *Jonathan M. Rotter*
**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy (SBN 134180)
Robert V. Prongay (SBN 270796)
Jonathan M. Rotter (SBN 234137)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email:  info@glancylaw.com

By: /s/ *Chet B. Waldman*
Chet B. Waldman (admitted *Pro Hac Vice*)
**WOLF POPPER LLP**
845 Third Avenue 12th Floor
New York, NY 10022

---

[28] Even in the extremely rare cases where courts have granted motions to strike class allegations before discovery and without a pending motion for class certification, they have done so without prejudice, and afforded the plaintiffs leave to replead. *See, e.g., Pepka v. Kohl's Dep't Stores, Inc.*, 2016 U.S. Dist. LEXIS 186402, at *11 (C.D. Cal. Dec. 21, 2016) ("Although the Court doubts that amending the FAC would cure the discussed deficiencies, it nonetheless will provide Plaintiff an opportunity to do so."); *see also Stassart*, 2009 U.S. Dist. LEXIS 121707, at *7 (when ruling on a motion to strike, as with motions to dismiss, "leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.").  Plaintiff respectfully requests that in the event the Court were inclined to grant Defendants' motion (which Plaintiff believes is unwarranted as explained herein), it does so without prejudice and permits repleading.

Telephone: (212) 759-4600
Fax: (212) 486-2093
Email: cwaldman@wolfpopper.com

***Attorneys for Plaintiff***

25

**PROOF OF SERVICE BY ELECTRONIC POSTING**

1

2      I, the undersigned say:

3      I am not a party to the above case, and am over eighteen years old.  On January

4   25, 2018, I served true and correct copies of the foregoing document, by posting the

5   document electronically to the ECF website of the United States District Court for the

6   Central District of California, for receipt electronically by the parties listed on the

7   Court's Service List.

8      I affirm under penalty of perjury under the laws of the United States of America

9   that the foregoing is true and correct.  Executed on January 25, 2018, at Los Angeles,

10  California.

11

12                                   *s/ Jonathan M. Rotter*
                                     Jonathan M. Rotter
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Mailing Information for a Case 5:17-cv-01935-FMO-SHK Renee MacLaughlan Bozarth v. Envision Healthcare Corporation et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **John Joseph Atallah**
  jatallah@foley.com,dgalvez@foley.com

- **Patricia I Avery**
  pavery@wolfpopper.com

- **Jonathan M Brenner**
  jbrenner@ebglaw.com,jonathan-brenner-8688@ecf.pacerpro.com,cemail@ebglaw.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **J Susan Graham**
  cemail@ebglaw.com,sgraham@ebglaw.com

- **R David Jacobs**
  cemail@ebglaw.com,djacobs@ebglaw.com

- **Kimberly Ann Klinsport**
  kklinsport@foley.com,LACA-litigationdocket@foley.com,dkmiller@foley.com

- **Alan R Ouellette**
  aouellette@foley.com,llanglois@foley.com

- **Robert S Plosky**
  rplosky@wolfpopper.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Eileen R Ridley**
  eridley@foley.com,wdelvalle@foley.com,tschuman@foley.com

- **Jonathan M Rotter**
  jrotter@glancylaw.com

- **Chet B Waldman**
  cwaldman@wolfpopper.com,rplosky@wolfpopper.com,cdunleavy@wolfpopper.com,ehachmeister@wolfpopper.com,pavery@wolfpopper.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)