# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE MACLAUGHLAN BOZARTH and STELLA BELL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENVISION HEALTHCARE CORPORATION, et al.,<br><br>Defendants. | Case No. ED CV 17-1935 FMO (SHKx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Having reviewed and considered Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class, (Dkt. 98, "Motion"), and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and Service Awards to Representative Plaintiffs, (Dkt. 95, "Fees Motion"), and the oral argument presented during the final fairness hearing held on June 18, 2020, the court concludes as follows.

## **BACKGROUND**

On August 22, 2017, Renee MacLaughlan Bozarth ("Bozarth") filed a class action complaint in state court against Anthem Inc.; Anthem Blue Cross and Blue Shield and Blue Cross of California d/b/a Anthem Blue Cross (collectively, "Anthem"); Envision Healthcare Corporation ("Envision"); EmCare Holdings, Inc. ("EmCare"); and EDS-I Practitioners of California ("EPC"), asserting claims for: (1) violations of the California Unfair Competition Law ("UCL"), Cal. Bus. &

Prof. Code §§ 17200, et seq.; (2) violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (3) breach of implied contract or quasi-contract; and (4) breach of the covenant of good faith and fair dealing. (See Dkt. 1-1, Complaint). On September 22, 2017, Anthem removed the action to this court based on federal question jurisdiction. (See Dkt. 1, Notice of Removal).

On November 11, 2017, Bozarth filed a First Amended Complaint ("FAC") asserting the first three claims but dropping Anthem as a defendant. (See Dkt. 23, FAC; see also Dkt. 24, Notice of Dismissal). The remaining claims revolve around "'surprise billing,' which occurs when [an insured] patient goes to a hospital that is 'in-network' with his/her health insurance, only to find out weeks later that the doctors are 'out-of-network' and their services are not covered by the patient's insurance." (Dkt. 23, FAC at ¶¶ 1-2). Bozarth alleges that the surprise billing is "especially common in emergency rooms, where patients must act quickly under stress." (Id. at ¶ 3). For example, when "EmCare contracts to manage a hospital's emergency department, insured patients are treated by out-of-network physicians staffed by EmCare[.]" (Id. at ¶ 4). That fact is not disclosed to the patients, nor is it reasonably possible for patients to ascertain which insurance is accepted by the hospital's emergency department. (See id.). According to plaintiff, "[w]hen EmCare enters the picture, the incidence of surprise billing increases." (Id.).

After engaging in extensive discovery, motion practice, an all-day mediation before the Hon. Dickran Tervizian (Ret.), followed by months-long mediation efforts among the parties and Judge Tervizian, the parties entered into a Settlement Memorandum of Understanding ("MOU") on November 29, 2018. (See Dkt. 90, Court's Order of December 30, 2019 ("Preliminary Approval Order" or "PAO") at 2). Following the MOU, the parties participated in two additional mediation sessions with Judge Tervizian (the second mediation also involved the Hon. Michael Dollinger (Ret.)) regarding attorney's fees and expenses. (See id. at 2-3).

On April 27, 2019, plaintiff filed the operative Second Amended Complaint ("SAC"), which added Stella Bell as an additional plaintiff. (Dkt. 82, SAC). On May 31, 2019, the parties finalized their settlement. (See Dkt. 90, PAO at 3).

The settlement class is defined as "all out-of-network patients who were provided

2

emergency department medical service(s) by an affiliated physician practice at a hospital in California between August 22, 2013, and [May 31, 2019]." (Dkt. 86-1, Stipulation and Agreement of Class Action Settlement ("Settlement Agreement") at ¶ 1.9; Dkt. 90, PAO at 3). An affiliated physician practice is "a physician practice (e.g., EDS-I Practice of California) that provides emergency department medical services at hospitals in California and either: contracts with EmCare, Inc., Envision Healthcare Corporation, Envision Physician Services, LLC (or any of their subsidiaries); or otherwise affiliates with Envision Healthcare Corporation to manage the non-medical aspects of the provision of Emergency Department Medical Services by the physician practice."[1] (Dkt. 86-1, Settlement Agreement at ¶ 1.2; Dkt. 90, PAO at 3).

Pursuant to the settlement, eligible class members can obtain monetary relief in two forms. First, class members may get a write-off of any outstanding balances for emergency department services by timely submitting a claim that includes: (1) an explanation of benefits ("EOB")[2] from his or her out-of-network payor indicating the allowable charges (i.e., the maximum allowed reimbursement for the out-of-network emergency services); and (2) proof of payment for the allowable charges. (See Dkt. 86-1, Settlement Agreement at ¶¶ 1.4, 1.18, 4.2; Dkt. 90, PAO at 3). Payments made by the benefit plan, including payments made to defendants, will be credited toward payment for the allowable charges. (See Dkt. 86-1, Settlement Agreement at ¶ 4.2.1 n. 2; Dkt. 90, PAO at 3).

Second, class members can obtain a refund of any payments made to defendants or to a third party, such as a collection agency, in excess of the allowable charges, provided that they timely submit a claim form that includes: (1) an EOB from the class member's benefit plan indicating the allowable charges for the emergency department services; and (2) proof that the

---

[1] An "out-of-network patient" is defined as "a patient that receives coverage for emergency department medical services through an out-of-network payor." (Dkt. 86-1, Settlement Agreement at ¶ 1.28).

[2] The Settlement Agreement defines an EOB as "the explanation of benefits statement sent by an out-of network payor to an individual who obtained coverage for emergency department medical service(s) from the out-of-network payor which explains how the covered individual's benefits were applied to a claim for emergency department medical service(s) provided by the affiliated physician practice." (Dkt. 86-1, Settlement Agreement at ¶ 1.18).

class member made payments for the services exceeding the allowable charges. (See Dkt. 86-1, Settlement Agreement at ¶ 4.3; Dkt. 90, PAO at 3-4). "Payments made by the [c]lass [m]ember's benefit plan will be credited toward payment amounting to the [a]llowable [c]harge(s)." (Dkt. 86-1, Settlement Agreement at ¶ 4.2.1 n. 2; Dkt. 90, PAO at 4).

The settlement also provides nonmonetary relief in the form of disclosure requests made by defendants to California facilities. (See Dkt. 86-1, Settlement Agreement at ¶ 4.1; Dkt. 90, PAO at 4). Specifically, defendants will request that all California facilities with emergency departments staffed by defendants include the following disclosures in both a document provided to patients and in a prominent location in the emergency department: (i) the name of the physician practice that contracts with the hospital; (ii) that the emergency department physicians are not employed by the hospital; (iii) that the emergency department physicians bill separately for emergency medical services; (iv) that the emergency department physicians may not have the same network status as the hospital and may be out-of-network; (v) that patients should check with their health insurer to determine the network status of the physician practice; and (vi) that patients may call a specified number for information regarding payment and coverage for emergency department medical services provided by the physician group. (See Dkt. 86-1, Settlement Agreement at ¶ 4.1; Dkt. 90, PAO at 4).

Pursuant to the settlement, defendants will not oppose an application for an award of attorney's fees and costs of not more than $1,850,000, (Dkt. 86-1, Settlement Agreement at ¶ 9.1), or oppose service awards in the amount of $2,500 for Bozarth and $1,250 for Bell. (Id. at ¶ 8.1). Finally, "[a]ll costs and expenses of the notice program . . . and of administering the settlement shall be paid by defendants." (Id. at ¶ 5.1). The parties propose that Rust Consulting ("Rust") serve as the claims administrator. (Id. at ¶ 5.2).

On December 30, 2019, the court granted preliminary approval of the settlement, appointed Rust as the settlement administrator, and directed Rust to provide notice to the class members. (See Dkt. 90, PAO at 22). After the court issued its Preliminary Approval Order, and based on comments received from the California Department of Justice pursuant to the CAFA Notice, the parties submitted an amendment to the Settlement Agreement, along with a revised notice and

claim form. (See Dkt. 91). The court approved the Amendment to Stipulation and Agreement of Class Action Settlement, (Dkt. 91-1, "Settlement Amendment")[3]; the revised class Notice (Dkt. 91-1, Attach. B ("Revised Notice")); and revised Claim Form, (Dkt. 91-1, Attach. A ("Revised Claim Form")), and reset the class settlement deadlines. (Dkt. 92, Court's Order of January 29, 2020). Subsequently, Rust implemented the notice program approved by the court.[4] (See Dkt. 99, Plaintiffs' Memorandum of Points and Authorities in Support of Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class ("Memo") at 7; Dkt. 100, Declaration of Chet B. Waldman in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Waldman Decl.") at ¶ 2; see also Dkt. 93, Joint Motion for Supplemental Notification at ¶ 1). On February 27, 2020, notice packets were sent to 285,730 class members. (See Dkt. 104, Amended Declaration of Settlement Administrator ("Rust Decl.") at ¶ 3.2).[5] As of June 14, 2020, no objections had been received by Rust, (see id. at ¶ 4.2), and only 211 class members have timely opted out. (See id. at ¶ 4.1).

Plaintiffs now seek: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) incentive payments for plaintiffs. (See Dkt. 98, Motion; Dkt. 95, Fees Motion).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The

---

[3] The Settlement Amendment clarifies how defendants intend to process claims submitted by class members whose uncollected debt was sold to a third-party collection agency. (See Dkt. 91-1, Settlement Amendment at ¶ C). Specifically, the Settlement Amendment revises § 4.2.3 of the Settlement Agreement and provides, in part, that upon submission of certain documents by a class member under such circumstances, defendants "will make arrangements to have any outstanding debt . . . satisfied." (Id.).

[4] On March 11, 2020, the parties filed a joint motion to allow Rust to mail a supplemental class notice to correct a zip code error that was included in the claim form and opt-out form. (See Dkt. 93). The zip code error only affected the mailing address for claim and opt-out forms sent via courier service such as Fed-Ex. (See id. at ¶¶ 1-2). The court authorized Rust to disseminate a supplemental notification to the class informing them of the zip code error. (See Dkt. 94, Court's Order of March 16, 2020).

[5] As of June 14, 2020, approximately 95.8% or 273,878 class notices have been presumed delivered successfully. (See Dkt. 104, Rust Decl. at ¶ 3.5).

primary concern of [Rule[6] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992) (quoting Officers for Justice, 688 F.2d at 625), who must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926 F.3d 539, 569 (9th Cir. 2019). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice, 688 F.2d at 630.

     In order to approve a settlement in a class action, the court must conduct a two-step inquiry.[7] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard). In determining whether a settlement is fair, reasonable, and adequate, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."[8] In re Bluetooth Headset Prod. Liab.

---

[6] All "Rule" references are to the Federal Rules of Civil Procedure.

[7] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, CAFA notice was provided, (see Dkt. 100, Waldman Decl. at ¶ 4), and no objections have been received in response. (See id.; see also Dkt. 104, Rust Decl. at ¶ 2). However, in response to comments received from California Department of Justice, the parties amended the Settlement Agreement. (See Dkt. 91; Dkt. 91-1, Settlement Amendment; Dkt. 92, Court's Order of January 29, 2020).

[8] The 2018 amendments to Rule 23(e) provide further guidance for determining whether a settlement is fair, reasonable, and adequate, including whether: "(A) the class representatives and

1 Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)); Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (same).[9]

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight [] factors alone is not enough[.]" Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id.; see Koby v. ARS Nat'l Servs., Inc., 846 F.3d 1071, 1079 (9th Cir. 2017) ("When, as here, a class settlement is negotiated prior to formal class certification, there is an increased risk that the named plaintiffs and class counsel will breach the fiduciary obligations they owe to the absent class members."). Thus, "such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." Bluetooth, 654 F.3d at 946. In assessing such an agreement, courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing'

---

class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The Advisory Committee notes to the 2018 amendments state that "[t]he goal of [the] amendment [was] not to displace any factor" that courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." 2018 Adv. Comm. Notes to Amendments to Rule 23. The court addressed several of the factors set forth in the amended Rule 23(e) during the preliminary approval process. (See, e.g., Dkt. 90, PAO at 16-17 (considering whether the settlement was the product of arm's-length negotiations); id. at 17–18 (addressing whether recovery for the class is fair, adequate, and reasonable)). In evaluating the settlement, the court will consider the factors set forth by the Ninth Circuit, while also taking into account the Rule 23(e) amendments.

[9] Although the settlement approval in Campbell occurred prior to the 2018 amendments to Rule 23(e), the Ninth Circuit noted that applying the amendments would not change its conclusions. See Campbell, 951 F.3d at 1121 n. 10 (affirming the district court's approval of the settlement).

arrangement[;]"[10] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]"  Id. at 947 (internal quotation marks and citations omitted).

## DISCUSSION

I.   FINAL APPROVAL OF CLASS SETTLEMENT.

   A.   Class Certification.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3).  (See Dkt. 90, PAO at 9-15, 22).  Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).  See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3).  Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

   B.   Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal[.]"  Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice.  (See Dkt. 90, PAO at 20-21; Dkt. 91-1, Attach. B (Revised Notice); Dkt. 91-1, Attach. A (Revised Claim Form); Dkt. 92, Court's Order of January 29, 2020).  As discussed above, Rust has implemented the notice program.  (Dkt. 100, Waldman Decl. at ¶ 2; Dkt. 104, Rust Decl. at

---

[10] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."  Id. at 940 n. 6.

1  ¶¶ 3.1-3.5, 6.1). Accordingly, based on the record and its prior findings, the court finds that the
2  class notice and the notice process fairly and adequately informed class members of the nature
3  of the action, the terms of the proposed settlement, the effect of the action and release of claims,
4  the class members' right to exclude themselves from the action, and their right to object to the
5  proposed settlement. (See Dkt. 91-1, Attach. B (Revised Notice); Dkt. 91-1, Attach. A (Revised
6  Claim Form)).

      C.     <u>Whether the Class Settlement is Fair, Adequate and Reasonable</u>.

          1.    **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the settlement, the court must assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." <u>Adoma v. Univ. of Phoenix, Inc.</u>, 913 F.Supp.2d. 964, 975 (E.D. Cal. 2012) (internal quotation marks omitted). "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." <u>Id.</u> at 976.

Here, in granting preliminary approval of the settlement, the court recognized that the "risks and delay of continued litigation [were] significant" and when weighed against those risks and the delay, the "benefits to the class [fell] within the range of reasonableness." (Dkt. 90, PAO at 17-18). Settlement affords class members immediate and potentially significant monetary benefits in the face of various defenses to plaintiffs' claims. (<u>See</u> <u>id.</u>; Dkt. 99, Memo at 19-20). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds that these factors support approval of the settlement.

          2.    **The Risk of Maintaining Class Action Status Through Trial**.

Because the parties reached settlement prior to the filing of a motion for class certification, plaintiffs faced a risk that the class would not be certified. Accordingly, this factor weighs in favor of approving the settlement as fair, adequate, and reasonable. <u>See</u>, <u>e.g.</u>, <u>Rodriguez v. W. Publ'g</u>

9

Corp., 563 F.3d 948, 966 (9th Cir. 2009) ("At the time of settlement, the risk remained that the nationwide class might be decertified[.]"); Rosado v. Ebay Inc., 2016 WL 3401987, *4 (N.D. Cal. 2016) ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").

### 3. **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval, the court noted that "[a]lthough the exact dollar amount of the settlement [was] unknown at th[e] time since the amounts of the refunds and write-offs will vary among class members based on their respective services and what their health benefit plans determined to be allowable charges, and whether the class member paid an amount in excess of the allowable charges, [c]lass recovery is potentially 100%, as it reimburses (or writes off) the charges above the amounts allowed by the [c]lass [m]ember's health benefit plan, and is only limited by a [c]lass [m]ember's failure to timely file a Claim Form with the appropriate documentation[.]"[11] (Dkt. 90, PAO at 17 (internal quotation marks omitted); see also Dkt. 99, Memo at 19). Here, the relief provided to the class is more than adequate. (See id.); cf Linney, 151 F.3d at 1242 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). Accordingly, this factor also weighs in favor of final approval.

### 4. **The Extent of Discovery Completed and the Stage of Proceedings**.

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Spann v. J.C. Penney Corp., 211 F.Supp.3d

---

[11] The deadline for class members to submit claims is August 30, 2020. (See Dkt. 104, Rust Decl., Exh. A (Notice) at 2).

1244, 1256 (C.D. Cal. 2016) (quoting Nat'l Rural Telecomms., 221 F.R.D. at 527). The court previously examined these factors at length, noting that the parties had engaged in extensive discovery and motion practice, (see Dkt. 90, PAO at 16), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id.), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id.). In other words, "the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions." Spann, 211 F.Supp.3d at 1256; Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

### 5. **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Spann, 211 F.Supp.3d at 1257 (quoting Nat'l Rural Telecomms., 221 F.R.D. at 528); see also Fed. R. Civ. P. 23(e)(2)(A) (courts should consider whether "class counsel have adequately represented the class").[12] Here, class counsel, who adequately represented the class, (see Dkt. 90, PAO at 12), view the settlement as "fair, reasonable, and adequate." (Dkt. 99, Memo at 21-22; Dkt. 97, Declaration of Chet B. Waldman in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and Service Awards to Representative Plaintiffs ("Waldman Fees Decl.") at ¶ 36) (characterizing settlement as "excellent"). Thus, this factor also supports approval of the settlement.

---

[12] In its Preliminary Approval Order, the court found that plaintiffs were adequate class representatives. (See Dkt. 90, PAO at 11-12); Fed. R. Civ. P. 23(e)(2)(A) (in approving class action settlements courts should consider whether "the class representatives . . . have adequately represented the class").

11

6. **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Spann, 211 F.Supp.3d at 1257 (concluding "[t]here is no government participant in this matter[,]" rendering "this factor [] not relevant").

7. **The Reaction of Class Members to the Proposed Settlement**.

The absence of a large number of objections and exclusions to a proposed class action settlement supports approval of a settlement. See Spann, 211 F.Supp.3d at 1257 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Here, the reaction of the class has been very positive. There were no objections and only 211 timely requests for exclusion, representing less than 0.08% of the class. (See Dkt. 100, Waldman Decl. at ¶¶ 5 & 6; Dkt. 104, Rust Decl. at ¶ 4.2). The lack of objections and limited requests for exclusion support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

D. Whether there are Signs of Collusion.

"When, as here, the settlement was negotiated before the district court certified the class, there is an even greater potential for a breach of fiduciary duty by class counsel, so [the Ninth Circuit] require[s] the district court to undertake an additional search for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Volkswagen "Clean Diesel" Mktg. Litig., 895 F.3d 597, 610-11 (9th Cir. 2018) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court carefully scrutinized the settlement and determined that it was the product

of arms-length negotiations, (see Dkt. 90, PAO at 16-17), and that there was "no evidence that the settlement [was] 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (Id.) (quoting Rodriguez, 563 F.3d at 965).

Nothing has changed since preliminary approval to raise any red flags or "subtle signs" of collusion. As noted above, class members can potentially obtain 100% of the relief to which they are entitled, and attorney's fees will be determined based on class counsel's lodestar. In short, the court finds the settlement is fair, reasonable, and adequate, and not the product of collusion.

II. ATTORNEY'S FEES, COSTS AND SERVICE AWARD.

The Settlement Agreement provides that defendants will not oppose class counsel's request for an award of attorney's fees, expenses, and costs of not more than $1,850,000. (Dkt. 86-1, Settlement Agreement at ¶ 9.1).

A. Attorney's Fee Award.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. See Mangold v. Cal. Public Util. Commc'n, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees."). However, courts "may still look to federal authority for guidance in awarding attorneys' fees." Black v. T-Mobile USA, Inc., 2019 WL 3323087, *5 (N.D. Cal. 2019) (citing Apple Computer, Inc. v. Sup. Ct., 126 Cal.App.4th 1253, 1264 n. 4 (2005)).

The Ninth Circuit and the California Supreme Court have both held that trial courts have the discretion to choose among two different methods for calculating a reasonable attorney's fees award. See Laffitte v. Robert Half Int'l Inc., 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel

for their efforts."); Bluetooth, 654 F.3d at 942 (noting that "courts have discretion to employ either the lodestar method or the percentage-of-recovery method").  "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate.  Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted); see also In re Hyundai, 926 F.3d at 570.  In the alternative, "[t]he percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." Laffitte, 1 Cal.5th at 489; see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re Hyundai, 926 F.3d at 570 (same).

"Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see Laffitte, 1 Cal.5th at 504.  Here, class counsel now seek $1,850,000 in attorney's fees pursuant to the lodestar method.  (See Dkt. 95, Fees Motion at 1; Dkt. 96, Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and Service Awards to Representative Plaintiffs ("Fees Memo") at 1 & 10).  The court agrees that evaluating class counsel's attorney's fees request under the lodestar method is appropriate here, especially since there is no common fund in this case, and the settlement includes nonmonetary relief.

Having reviewed class counsel's submission in connection with the Fees Motion, the court finds the requested attorney's fees and costs are appropriate given the extensive work performed in this action and the prevailing rates in the community for lawyers of comparable skill, experience, and reputation.  (See Dkt. 96, Fees Memo at 10-16; Dkt. 97, Waldman Fees Decl. at ¶¶ 36-42, 45-50 & Exhs. C, E-F; Dkt. 97-4, Declaration of Jonathan M. Rotter in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, and Service Awards to Representative Plaintiffs ("Rotter Decl.") at ¶¶ 2-6 & Exhs. A & B).  Significantly, class counsel's

actual lodestar as of March 27, 2020, was $3,119,194, (see Dkt. 97, Waldman Fees Decl. at ¶ 45), resulting in a negative multiplier. (See Dkt. 96, Fees Memo at 19). In short, the requested attorney's fee award is fair and reasonable.[13]

B.  Class Representative Service Awards.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiffs request that the court grant service awards in the amount of $2,500 for Bozarth and $1,250 for Bell. (See Dkt. 96, Fees Memo at 21). Such incentive awards are presumptively reasonable, see Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable), and the court finds that they do not create a conflict of interest between plaintiffs and class members. See, e.g., In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947-48 (9th Cir. 2015) (upholding reasonableness of $5,000 incentive awards that were roughly 417 times larger than $12 individual awards because the number of representatives was relatively small, and the total amount of incentive awards "ma[de] up a mere .17% of the total settlement fund").

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and Certification of Settlement Class **(Document No. 98)** is **granted** as set forth herein.

2. The court hereby **grants final approval** to the parties' Stipulation and Agreement of Class Action Settlement (Document No. 86-1) and Amendment to Stipulation and Agreement of Class Action Settlement) (Document No. 91-1) (collectively, ("Settlement Agreement"). The court

---

[13] Class counsel's costs of $90,107 are included in the $1,850,000 request. (See Dkt. 96, Fees Memo at 20-21; Dkt. 97, Waldman Fees Decl. at ¶ 52; Dkt. 97-7, Wolf Popper Expenses; Dkt. 97-4, Rotter Decl. at ¶ 6 & Exh. C (Glancy Prongay & Murray LLP Expense Report). The court finds the costs incurred by class counsel to be reasonable.

finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses, and Service Awards to Representative Plaintiffs **(Document No. 95)** is **granted** as set forth herein.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c) as defined in ¶ 1.9 of the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiffs Renee MacLaughlan Bozarth and Stella Bell shall be paid a service payment of $2,500 and $1,250, respectively, in accordance with the terms of the Settlement Agreement and this Order.

7. Class counsel shall be paid $1,850,000 in attorney's fees and costs in accordance with the terms of the Settlement Agreement and this Order.

8. The Claims Administrator, Rust, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

9. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

///

12. Judgment shall be entered accordingly.

Dated this 30th day of June, 2020.

/s/
Fernando M. Olguin
United States District Judge